IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-527-BO

U.S. TOBACCO COOPERATIVE, INC., )
U.S. FLUE-CURED TOBACCO )
GROWERS, INC., and BIG SOUTH )
DISTRIBUTION, LLC, )
)
             Plaintiffs, )
)
v. )
)
BIG SOUTH WHOLESALE OF )
VIRGINIA, LLC d/b/a BIG SKY )
INTERNATIONAL, BIG SOUTH )
WHOLESALE, LLC, UNIVERSAL )
SERVICES CONSULTING GROUP, )
JASON CARPENTER, CHRISTOPHER )
SMALL, EMORY STEPHEN DANIEL, )
and ALBERT M. JOHNSON, )
)
             Defendants. )

ORDER

This cause comes before the Court on the United States' motion to dismiss; plaintiffs' motion for partial summary judgment; defendants Big South Wholesale of Virginia d/b/a Big Sky International, Big South Wholesale, Carpenter, and Small's motion for summary judgment; defendant Daniel's motion for summary judgment; and defendant Johnson's motion for summary judgment. The matters have been fully briefed and are ripe for ruling. For the reasons that follow, the United States is dismissed, plaintiffs' motion for partial summary judgment is granted in part and denied in part, and defendants' motions for summary judgment are granted.

## BACKGROUND

### *Procedural History*

On July 23, 2013, plaintiffs filed a complaint alleging that two of their employees, a consultant, and others engaged in a conspiracy to defraud plaintiffs of millions of dollars. [DE 1]. On April 23, 2014, the United States moved to intervene and stay discovery in the matter due to ongoing grand jury investigations, [DE 144], which was granted by the Court[1] on September 30, 2014 [DE 209]. The Court further granted in part a motion for judgment on the pleadings filed by defendants Big South Wholesale of Virginia (Big South Wholesale-Va.), Big South Wholesale, Carpenter, and Small (collectively the Big Sky defendants) and dismissed plaintiffs' claims for breach of fiduciary duty and constructive fraud against Carpenter and Small, as well as plaintiffs' claims for tortious interference, misappropriation of corporate opportunities, breach of the covenant of good faith and fair dealing, and unjust enrichment against the Big Sky defendants. [DE 212].

On July 24, 2015, the Court declined to extend the stay of discovery further [DE 323], and the case proceeded through discovery. On June 1, 2016, the parties filed various motions for summary judgment. On August 24, 2016, the Court held an evidentiary hearing on a petition to substitute the United States as a party pursuant to 28 U.S.C. § 2679 (Westfall certification) that had been filed by the Big Sky defendants. On November 7, 2016, the Court granted in part the petition to substitute the United States and granted Westfall certification to the Big Sky defendants for plaintiffs' fourth through ninth and seventeenth claims for relief. [DE 635].

By order entered May 19, 2017, the seal imposed on a large number of documents in the case was lifted. [DE 810]. The Court took up plaintiffs' motion to reconsider Westfall certification

---

[1] Senior United States District Judge James C. Fox presided over this case until his retirement, and the matter was reassigned to the undersigned on May 10, 2017.

2

and, after a hearing on July 20, 2017, granted the motion to reconsider, removed Westfall certification for the Big Sky defendants, and dismissed the United States as a substituted party. [DE 1096]. The Big Sky defendants appealed the denial of Westfall certification, and by opinion filed August 3, 2018, the Court of Appeals for the Fourth Circuit vacated this Court's order removing Westfall certification and remanded the case for further proceedings. [DE 1116]; *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236 (4th Cir. 2018).

Accordingly, the case is now before the Court with the United States substituted for the Big Sky defendants on plaintiffs' claims for North Carolina RICO violations, fraud, fraud in the inducement, North Carolina Unfair and Deceptive Trade Practices Act (UDTPA) violations and civil conspiracy (plaintiffs' fourth through ninth, and seventeenth claims for relief). Also remaining for adjudication are plaintiffs' claims against Carpenter, Small, and/or Big South Wholesale and Big South Wholesale-Va. for federal RICO violations and breach of contract (plaintiffs' first, second, third, twelfth, thirteenth, and fourteenth claims for relief); plaintiffs' claims against Daniel and/or Universal Services Consulting Group (Universal) for federal RICO violations, North Carolina RICO violations, fraud, fraud in the inducement, constructive fraud, violations of the North Carolina UDTPA, breach of fiduciary duty, tortious interference with contractual relations, misappropriation of corporate opportunities, civil conspiracy, and unjust enrichment (plaintiffs' first through third, fourth through sixth, seventh through eleventh, and fifteenth through eighteenth claims for relief); plaintiffs' claims against Johnson for federal RICO violations, North Carolina RICO violations, fraud, fraud in the inducement, North Carolina UDTPA violations, breach of fiduciary duty, and civil conspiracy (plaintiffs' second, sixth, seventh through tenth and seventeenth claims for relief); Carpenter and Small's counterclaims for breach of contract, piercing the corporate veil, violations of North Carolina's UDTPA, and

3

punitive damages; Daniel's counterclaim for indemnification; and Johnson's counterclaim for indemnification.

Plaintiffs have moved for partial summary judgment on their claims for breach of the asset purchase agreement, breach of consulting agreement, and breach of employment agreement (plaintiffs' twelfth through fourteenth claims for relief) and on defendants Carpenter and Small's first, fourth, and sixth counterclaims. The Big Sky defendants have moved for summary judgment in their favor on each of plaintiffs' claims against them; Daniel, Universal, and Johnson have also moved for summary judgment in their favor on each of plaintiffs' claims and on their counterclaims against plaintiffs for indemnification. The United States has moved to dismiss each of plaintiffs' claims against it.

## Factual Background

As the case is before the Court on multiple motions for summary judgment, the following factual recitation is comprised, unless otherwise indicated, of the undisputed portions of the Local Civil Rule 56.1 statements of undisputed material facts filed by the parties. [DE 460; 848; 649; 1018; 1135; 1144].[2]

Plaintiff U.S. Tobacco Cooperative (U.S. Tobacco) is a member-owned cooperative that purchases tobacco from its member-growers and sells it to domestic and foreign customers. Plaintiff U.S. Flue-Cured Tobacco Growers (U.S. Flue-Cured), a wholly-owned subsidiary of U.S. Tobacco, was formed in 2004 to purchase a cigarette manufacturing facility in Timberlake, North Carolina. U.S. Flue-Cured entered into an exclusive manufacturing agreement with Premier Manufacturing, Inc., under which it manufactured Premier cigarette brands such as "Wildhorse";

---

[2] Plaintiffs included objections to defendants' statement of undisputed material facts based upon the relevance of the fact asserted; where the Court has deemed it necessary, such facts are included in this background recitation.

4

U.S. Flue-Cured later began to manufacture its own cigarette brands, including "1839." Until May 2011, U.S. Flue-Cured sold its cigarettes through third-party distributors, which included defendants Big South Wholesale and Big South Wholesale-Va., companies owned and operated by defendants Carpenter and Small.

In 2006 and 2007 respectively, defendants Carpenter and Small began working with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in confidential roles, assisting ATF with operations that targeted corrupt cigarette retailers, wholesalers, brokers, distributors, and manufacturers.

In early 2011, Daniel approached the U.S. Tobacco board of directors and encouraged them to acquire the assets of Big South Wholesale and Big South Wholesale-Va. Plaintiff Big South Distribution was organized as a wholly-owned subsidiary of U.S. Flue-Cured, and defendant Daniel, who was the executive vice president of U.S. Flue-Cured, became the president of Big South Distribution. In approximately December 2011, negotiations between Daniel, Carpenter, and Small began for U.S. Flue-Cured to acquire Big South Wholesale and Big South Wholesale-Va., and Daniel served as U.S. Tobacco's lead negotiator for the purchase of Big South Wholesale and Big South Wholesale-Va.'s assets. While negotiations were ongoing, a meeting was held on March 23, 2011, which included ATF Agent Whittemore,[3] Carpenter, Small, Daniel, U.S. Tobacco and U.S. Flue-Cured's chairman of the board of directors defendant Johnson, U.S. Tobacco treasurer John Taylor, plaintiffs' outside auditor Clay Worden, U.S. Tobacco president Tommy Bunn, and plaintiffs' outside general counsel Marks Arnold. Agent Wittemore informed the attendees, among other things, that Carpenter and Small's operations with ATF were winding

---

[3] Special Agent Lesnak was unable to attend the 23 March 2011 meeting.

5

down, and further instructed all attendees about the importance of maintaining as confidential the information that had been discussed at the meeting.

Prior to the close of the agreement to purchase assets of Big South Wholesale and Big South Wholesale-Va., there was no disclosure to plaintiffs' full board of directors regarding Carpenter and Small's work with the ATF or that, after the asset purchase, Carpenter and Small planned to form a separate entity called Big Sky International which would sell cigarettes to Big South Distribution at marked-up prices. Also undisclosed to the full board of directors were payments made by Carpenter and Small through Big South Wholesale-Va. to Universal Services First Consulting, a company owned and controlled by Daniel, for $2,000 per month from August 2010 to April 2011, totaling $18,000.

Negotiations regarding the acquisition of Big South Wholesale and Big South Wholesale-Va. continued, culminating in an asset purchase agreement (APA) that was entered into on May 1, 2011. Pursuant to the APA, U.S. Tobacco paid Carpenter and Small approximately $8.6 million and Big South Distribution acquired assets of Big South Wholesale and Big South Wholesale-Va. On May 2, 2011, Carpenter and Small through Big South Wholesale-Va. made a payment of $69,066.67 to Universal First Consulting, and this payment was not disclosed to U.S. Tobacco's full board of directors.

As part of the APA, Carpenter was hired as a consultant and Small as an employee of the newly formed Big South Distribution. Under the APA and Carpenter and Small's consulting/employment agreements, a non-competition provision forbade Carpenter and Small from competing with Big South Distribution in the wholesale acquisition and distribution of tobacco products in Alabama, North Carolina, Virginia, Tennessee, South Carolina, and Georgia. Four days prior to the close of the APA, on April 27, 2011, Daniel sent an email to U.S. Tobacco's

6

general counsel Marks Arnold, Carpenter and Small's counsel Henry Long, Carpenter, Small, and John Taylor, in part describing "concern over business operations that [Carpenter and Small] are involved in and the 'special' nature of certain activities that must be handled with extreme confidentiality." [DE 1135-14]. Marks Arnold responded by email the same day stating "Based on my conversation with Rusty Irby [Big South Wholesale's attorney] this morning, I suggest that we all recognize that the 'special' activities will not violate the non-compete, but not document that fact, for obvious reasons." [DE 849 Dep. Ex. 29].

After the APA closed, Carpenter and Small oversaw Big South Distribution's day-to-day operations and controlled the tobacco products that it purchased for wholesale, and were paid annual salaries of more than $100,000 per year plus a percentage of profits. Carpenter and Small also continued to operate Big South Wholesale-Va., under the name Big Sky International, out of the Big South Distribution warehouse in Bristol, Virginia. From May 2011 to May 2013, Carpenter and Small sold tobacco products from Big Sky to Big South Distribution, the majority of which were "Brand B" cigarettes. These sales exceeded $24 million. Between May 2011 and March 2013, Carpenter and Small through Big Sky made payments of over $470,000 to Universal First Consulting, and these payments were not disclosed to U.S. Tobacco's full board of directors.

On March 7, 2013, Brandon Moore, an employee at the Bristol, Virginia warehouse, emailed Stuart Thompson, the chief financial officer of U.S. Tobacco, about activities and alleged wrongdoing taking place at the warehouse. [DE 1135-23] Thompson Dep. at 130. The U.S. Tobacco board of directors voted to initiate an internal investigation into Moore's allegations and hired outside counsel. On July 23, 2013, U.S. Tobacco terminated Carpenter's consulting agreement and Small's employment agreement. Both Carpenter's consulting and Small's employment agreement contained early termination penalties where the agreement was terminated

without cause. A finding that their respective non-competition agreements have been violated would forfeit any early termination penalties owed.

DISCUSSION

I.      United States' motion to dismiss.

On October 12, 2018, plaintiffs filed a notice of voluntary dismissal of their claims against the United States pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. [DE 1125]. Rule 41(a)(1)(A)(i) provides a plaintiff with the right to dismiss an action without a court order by filing a notice of dismissal before the opposing party has filed an answer or motion for summary judgment. Although some courts have found that reference to "an action" by the rule requires that a plaintiff may not proceed under Rule 41 to dismiss claims against one but not all defendants, "the sounder view and the weight of judicial authority are to the contrary." 9 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2362 (3d ed. 2008); *see also Duke Progress Energy LLC v. 3M Co.*, No. 5:08-CV-460-FL, 2015 WL 5603344, at *2 (E.D.N.C. Sept. 23, 2015) (noting use of Rule 41(a) to dismiss fewer than all defendants in an action is standard practice in this district); *S. Bank & Tr. Co. v. Laburnum Hotel Partners, LLC*, No. 2:13CV216, 2014 WL 3052535, at *5 (E.D. Va. July 3, 2014). Accordingly, by operation of the notice of voluntary dismissal, the United States has been dismissed as a defendant in this action. Counts four, five, six, seven, eight, nine, and seventeen of the second amended complaint are therefore dismissed without prejudice, and the United States' motion to dismiss is denied as moot. Plaintiffs' motion for leave to file surreply to the United States' renewed motion to dismiss is granted.

II.     Big Sky defendants' motion for summary judgment.

Defendants Carpenter, Small, Big South Wholesale, and Big South Wholesale-Va. have moved for summary judgment in their favor on all claims, which include claims for federal RICO

8

violations and state law claims for breach of contract. A motion for summary judgment may not

be granted unless there are no genuine issues of material fact for trial and the movant is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). If that burden has been met, the non-moving party must then come forward and

establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine

issue of material fact exists for trial, a trial court views the evidence and the inferences in the light

most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving

party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a

verdict for the nonmoving party. . . .and [a] fact is material if it might affect the outcome of the

suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir.

2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not

suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding

cross-motions for summary judgment, a court considers each motion separately and resolves all

factual disputes and competing inferences in the light most favorable to the opposing party.

*Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

A.     Federal RICO claims

In response to plaintiffs' federal RICO[4] claims, the Big Sky defendants have asserted the

privilege of qualified immunity.

---

[4] The Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. §§ 1961 *et seq.*

9

Qualified immunity shields government officials from liability for a statutory or constitutional violation so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established," *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010), and a court may exercise its discretion to decide which prong of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

At the outset, the Court concludes that the Big Sky defendants are entitled to raise the privilege of qualified immunity. "Sometimes, as in this case, private individuals will work in close coordination with public employees, and face threatened legal action for the same conduct." *Filarsky v. Delia*, 566 U.S. 377, 391 (2012). Where there is no dispute that a government employee performing the work at issue would be entitled to seek the protection of qualified immunity, so too can a private individual who has been brought in to perform that work. *Id.* at 393-394. Though Carpenter and Small were not government officials, their work for the ATF was at the direction and supervision of their primary ATF handler, Senior Special Agent Thomas Lesnak. *See U.S. Tobacco Coop.*, 899 F.3d at 252, 260. "[I]ndividuals . . . under contract with the government, are entitled to raise a qualified immunity defense because they are the functional equivalent of public officials." *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir. 1992). Moreover, Carpenter and Small were not providing services to the government in competition with other tobacco distributers, and in fact became the "sole source" for the services they provided to the ATF. [DE 848] Whittemore Dep. at 139, 173; *contra Richardson v. McKnight*, 521 U.S. 399, 413 (1997).

10

The Court further concludes that the Big Sky defendants are entitled to qualified immunity on plaintiffs' federal RICO claims. Whether a right was clearly established is a case specific determination, and the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In determining whether a right is clearly established, [a court] may rely upon cases of controlling authority in the jurisdiction in question, or a 'consensus of cases of persuasive' authority such that a reasonable officer could not have believed that his actions were lawful.'" *Rogers v. Pendleton*, 249 F.3d 279, 287 (4th Cir. 2001) (citation omitted).

RICO "imposes criminal and civil liability upon those who engage in 'a pattern of racketeering activity' defined as 'any act or threat involving' specified state-law crimes, acts indictable under various specified federal statutes, and other federal offenses." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587–88 (5th Cir. 1999) (citing 18 U.S.C. § 1961(1)). The relevant question therefore is whether a reasonable agent, standing in Carpenter's and Small's shoes, would have believed that selling tobacco products to plaintiffs after the closure of the APA and under terms provided by the ATF was lawful. In order to criminally convict someone of mail or wire fraud, the RICO predicate crimes alleged by plaintiffs here, the government must prove

> that the defendant (1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme. And the element "to defraud" has "the common understanding of wronging one in his property rights by dishonest methods or schemes and usually signify[ing] the deprivation of something of value by trick, deceit, chicane, or overreaching."

*United States v. Wynn*, 684 F.3d 473, 477–78 (4th Cir. 2012)(citations omitted). An element in the mail and wire fraud statutes is thus a specific intent to deprive another of something of value by misrepresentation or other dishonest method which would cause harm. *Id.* at 478.

11

What the mail and wire fraud cases cited by plaintiffs do not contemplate is the unique situation which took place here – that government informants would, at the direction of or with participation and approval by a government law enforcement agency, direct the sale of cigarettes back to their employer. When Big Sky sold cigarettes which it had acquired as part of its law enforcement activities to Big South Distribution, it did so with the approval of Special Agent Lesnak and Special Agent Lesnak was involved in setting the price. Whittemore Dep. at 178; [DE 848] Lesnak Dep. at 277.

Undoubtedly it was clearly established at the time these events took place it was unlawful to engage in mail or wire fraud, but the Court must identify the specific right that plaintiffs allege was violated at a high level of particularity, such that there would have been *no doubt* that the challenged action was unconstitutional or a violation of the relevant statute. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). The Court has been directed to no authority which would support a finding that, on these facts, there would have been no doubt that what the Big Sky defendants were doing violated the law.

The Big Sky defendants have carried their burden to demonstrate that, at the time these transactions were taking place, no controlling authority or consensus of persuasive authority would have put Carpenter and Small on notice that their actions were unlawful. Accordingly, as the rights alleged to have been violated were not clearly established, the Big Sky defendants are entitled to qualified immunity on plaintiffs' federal RICO claims.

B.    State law claims

Plaintiffs' state law claims against the Big Sky defendants fail for three reasons. First,

The liability of private defendants for actions taken at the direction of [federal] agents acting within their authority is a unique federal interest. Private businesses and individuals provide invaluable assistance as informants who provide evidence against law violators or, as in this instance, lend credibility to [ATF] undercover

12

> operations. If private businesses were not eligible for immunity from state law claims arising from assisting undercover federal operations, this would provide a major disincentive to assisting law enforcement and would undermine the needs and interests of the federal government.

*Brown*, 188 F.3d at 589; *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 505-07 (1988).

Thus, the Supremacy Clause will preempt state law liability of parties for actions which were taken at the direction of government agents acting within their authority and in good faith, reasonable reliance of those agents. *Brown*, 188 F.3d at 589. Plaintiffs primarily challenge application of the Supremacy Clause based upon Carpenter and Small's alleged bad faith. However, it is has been established that the government, and specifically Special Agent Lesnak, was not only aware of the sales of tobacco products to plaintiffs by Big Sky, but also that these sales were integral to ATF investigations. *See U.S. Tobacco Coop.*, 899 F.3d at 253; [DE 848] Lesnak Dep. at 209-210. While there has been much ado regarding the propriety of some of the specifics of ATF's engagement with Carpenter and Small, on which plaintiffs rely to attempt to create an issue of material fact, what is important here is that no *evidence* has been presented by plaintiffs which would create a genuine issue of fact as to whether the Big Sky defendants took action at the direction of Special Agent Lesnak and in good faith reliance on Special Agent Lesnak's instructions. There is further no *evidence* that Special Agent Lesnak acted outside the scope of his authority as a sworn ATF Agent.

Second, even if plaintiffs' state law claims were not displaced by the unique federal interest of investigating and prosecuting unlawful cigarette sales, the acts committed by the Big Sky defendants did not violate their non-competition agreements.

As discussed above, Carpenter and Small were prohibited from engaging in the sale, distribution, or marketing of tobacco products in a five-state area as well as providing services to any person or entity engaged in the tobacco business. Plaintiffs' own expert has agreed that

13

"conducting undercover operations supporting investigation of corrupt cigarette manufacturers, wholesalers and distributors" was not a typical commercial business. [DE 1048]; Jennings Dep. at 105. It is fair to conclude, then, that such activities on behalf of ATF would not have been contemplated by Carpenter and Small's non-competition clauses. Indeed, it is undisputed that after the close of the APA, the only work performed by Carpenter and Small that was not on behalf of Big South Distribution was in furtherance of ATF undercover operations; in other words, there is no evidence that Carpenter and Small engaged in any cigarette distribution or purchasing that was in competition with Big South Distribution. Although plaintiffs' rely on the declaration of Special Agent Kaye [DE 648-5] to suggest otherwise, Special Agent Kaye stated that Carpenter and Small's undercover roles *required* them to sell tobacco in four scenarios, to include sales of tobacco products to legitimate customers in non-government directed transactions, and Special Agent Kaye did not specifically address any sales made by Carpenter and Small after the close of the APA. *Id.* ¶ 3.

Finally, the plaintiffs waived the applicable non-competition clauses for work Carpenter and Small performed on behalf of the ATF. Section 5.5 of the APA provides that if Carpenter or Small wished to engage in activity otherwise prohibited by the non-competition clause, he could request a waiver of the non-competition clause, which if granted must be set forth in writing and signed by the party allowing the waiver. [DE 461-10 §§ 5.5, 10.7]. Plaintiffs contend that the merger clause in the APA prohibits consideration of any agreement which is not included in the APA. North Carolina courts recognize an exception to this general rule, however, "[w]here giving effect to the merger clause would frustrate and distort the parties' true intentions and understanding regarding the contract". *Zinn v. Walker*, 87 N.C. App. 325, 333 (1987). Alternatively, the

14

presumption of a merger clause may be rebutted by evidence of, *inter alia*, bad faith or unconscionability. *Id.* at 333.

In the days leading up to the execution of the APA, plaintiffs' counsel, in response to concerns from Carpenter and Small regarding the application of the non-competition clause to their ATF activities, stated "I suggest that we all recognize that the 'special activities' will not violate the non-compete, but not document that fact, for obvious reasons." [DE 849 Dep. Ex. 29, 27 April 2011 email]. In response, Carpenter wrote that he had spoken with his counsel and that they "[felt] comfortable not including the "special" activities in any document." *Id.* A few days later, the parties entered into the APA. No party disputes that the "special activities" referred to in these emails are Carpenter and Small's work for ATF. Indeed, the same email chain reveals discussions about a waiver of the non-competition clause which was expressly included in the APA, specifically Carpenter and Small's passive ownership of not more than 12% interest in Big South Wholesale of Middle Tennessee, LLC.

Whether the 27 April 2011 email should be integrated into the APA because not doing so would frustrate the true intentions of the parties or whether plaintiffs are now exhibiting bad faith in attempting to rely on the merger clause after their own counsel – who plaintiffs do not contend acted without authority in negotiating the APA –, in discussions with Carpenter and Small about their ATF activities and the non-competition provisions, expressly stated that such activities would not be covered, amounts to a distinction without a real difference. At bottom, the result is the same: plaintiffs cannot show that Carpenter and Small's ATF work violated their non-competition clauses.

Summary judgment in the Big Sky defendants' favor is also appropriate on plaintiffs' remaining breach of contract claims relating to use of the name "Big South" and an alleged

15

violation of §3.3(a) of the APA, as plaintiffs' failed to respond to the Big Sky defendants' argument

that the undisputed facts demonstrate that summary judgment is appropriate as to these claims.

See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees, 558 F.3d 731, 735 (8th Cir. 2009).

Accordingly, for these reasons, the Big Sky defendants' motion for summary judgment in

their favor on all claims is granted.

III.    Plaintiffs' motion for partial summary judgment.

For the foregoing reasons, plaintiffs' motion seeking entry of summary judgment on their

claims for breach of the non-competition provisions of the relevant contracts against the Big Sky

defendants is denied.

Plaintiffs' motion for summary judgment on the Big Sky defendants' first, fourth, and sixth

counterclaims is granted in part and denied in part. The Big Sky defendants' fourth counterclaim

for piercing the corporate veil is not an independent cause of action, but rather "is a method of

imposing liability on an underlying cause of action." *Shearson Lehman Hutton, Inc. v. Venners*,

165 F.3d 912 (4th Cir. 1998) (unpublished). The fourth counterclaim is therefore appropriately

dismissed insofar as it is alleged as an independent cause of action, but the Big Sky defendants

may proceed on a theory of piercing the corporate veil to establish liability.

"A punitive damages claim is not technically an independent cause of action, but is instead

dependent upon an award of compensatory damages on one of a plaintiff's other claims." *Taylor*

*v. Bettis*, 976 F. Supp. 2d 721, 747 (E.D.N.C. 2013).    Plaintiffs argue that the Big Sky defendants

cannot maintain a separate cause of action for punitive damages, and the Court agrees.    *See*

*Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 134 (1976).    However, whether the Big Sky

defendants are entitled to seek punitive damages on their breach of contract claims is a separate

question, which has not been addressed in plaintiffs' motion for summary judgment.    Because

16

North Carolina courts recognize that punitive damages may be recovered where the breach of a contract constitutes an independent tort, *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 330 (4th Cir. 1994), the Big Sky defendants may seek an award of punitive damages on their breach of contract claim arising out of the alleged breach of the APA's confidentiality provision. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998).

Plaintiffs have also moved for summary judgment in their favor on the Big Sky defendants' first counterclaim for breach of the employment and consulting agreements without cause, arguing that judgment in plaintiffs' favor is appropriate on this counterclaim because judgment in favor of plaintiffs on their claim for breach of the non-competition provisions is warranted. As the Court has denied plaintiffs' partial motion for summary judgment on their claim for breach of the non-competition provisions, plaintiffs' motion for summary judgment on the Big Sky defendants' first counterclaim is denied.

In sum, plaintiffs' motion for partial summary judgment is denied as to plaintiffs' twelfth, thirteenth, and fourteenth claims for relief and the Big Sky defendants' first counterclaim. Plaintiffs' motion for partial summary judgment is granted as to the Big Sky defendants' fourth and sixth counterclaims, insofar as they are alleged as independent causes of action.

IV.    Daniel and Universal Services First Consulting's motion for summary judgment.

Daniel and Universal[5] have moved for summary judgment in their favor on plaintiffs' claims against them, including claims for federal and North Carolina RICO violations, as well as state law fraud, unfair and deceptive trade practice, tortious interference with contractual relations, civil conspiracy, and unjust enrichment claims. Daniel and Universal have also moved for summary judgment on their counterclaim for indemnification.

---

[5] Universal Services First Consulting was a sole proprietorship of Daniel's, and the Court will refer to these defendants collectively as "Daniel."

17

Special Agent Lesnak described Daniel's role in this enterprise prior to the close of the APA as similar to that of Small's as a cooperating manufacturer. [DE 848] Lesnak Dep. at 138-39. Because of U.S. Flue-Cured's business model – which covered growing, processing, and wholesaling tobacco – Daniel was able to provide ATF and other agencies with a wealth of information and served as ATF's expert. *Id.* at 143-44. In addition to traveling to meetings and overseeing trainings, Daniel also provided assistance with an IRS audit. When Special Agent Lesnak inquired as to whether Daniel was being compensated for his work, Carpenter replied that "they" had it taken care of. *Id.* at 221. Both Daniel and Carpenter have stated under oath that from August 2010 to April 2011 Daniel was paid $2,000 per month for his assistance with the IRS audit. *See* [DE 850] Carpenter Decl. ¶ 13. Carpenter and Small also decided to split proceeds from two operations which ATF would allow them to retain for their work, for a total of $473,932.50 in payments to Daniel. *Id.* ¶¶ 24, 26. Carpenter stated that payments to Daniel were "unrelated to the [APA] or any other transactions between BSW-Va./Big Sky and BSD." *Id.* ¶ 28.

Plaintiffs have proffered no evidence which contradicts or raises a genuine issue of fact regarding the payments to Daniel. Although Special Agent Kaye declared that Special Agent Lesnak appeared to be the only ATF-employee with knowledge of the payments to Daniel and that ATF did not direct Carpenter and Small to make payments to Daniel, [DE 629] Kaye Decl. ¶ 4, such statement does not refute that the payments were made in exchange for work that Daniel was performing on the IRS audit and on behalf of ATF investigations. Again, plaintiffs have not proffered evidence that Special Agent Lesnak was acting outside of his authority during his dealings with Carpenter, Small, and Daniel. Additionally, plaintiffs' reliance on the timing and method of the payments to Daniel is insufficient at this stage to demonstrate there is a triable issue as to whether these payments were bribes. In order to successfully oppose a motion for summary

18

judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). If Daniel was not bribed as plaintiffs allege, plaintiffs' theories of liability begin to unravel.

Plaintiffs' federal RICO claim against Daniel fails because they have not created a genuine issue of fact as to whether Daniel engaged in fraud or any other RICO criminal predicate because the "kickbacks" on which they rely were payments made with the approval of Special Agent Lesnakfor ATF-related work. Further, as discussed above, the Supremacy Clause preempts the state law claims against Daniel as it preempts state law liability of parties for actions which were taken at the direction of government agents acting within their authority and in good faith, reasonable reliance on those agents. *Brown*, 188 F.3d at 589. Nor have plaintiffs sufficiently created an issue of fact as to whether Daniel acted in bad faith. Plaintiffs focus on the payments Daniel received from Carpenter and Small after the close of the APA and Daniel's concealment of Big Sky's operations. However, plaintiffs have offered no more than speculation that the payments to Daniel made after the close of the APA were not related to pre-APA work on behalf of the ATF, nor is the decision to follow the instructions of law enforcement that ATF-supported activities be kept confidential evidence of bad faith.

Based on the foregoing, Daniel's motion for summary judgment in his favor on plaintiffs' claims is granted.

V.    Johnson's motion for summary judgment.

Johnson is also entitled to summary judgment on plaintiffs' claims against him for federal and North Carolina RICO violations as well as state law claims for fraud, fraud in the inducement, unfair and deceptive trade practices, breach of fiduciary duty, and civil conspiracy.

19

It is undisputed that Johnson received no compensation or alleged "kickbacks" from any

of the transactions between Big Sky and Big South Distribution about which plaintiffs complain

or otherwise. Plaintiffs' claims against Johnson are generally premised on the following theory:

that Johnson violated his duties as a director when he failed to disclose to the full U.S. Tobacco

board of directors (1) his knowledge of U.S. Flue-Cured's participation in the government buy

program, (2) that Carpenter and Small had worked for the ATF prior to the close of the APA and

that they would work for the ATF after the APA, (3) that Carpenter and Small would sell Big

South Distribution cigarettes obtained through their ATF work, and (4) that Daniel was performing

tax consulting services to Carpenter and Small. Because, however, North Carolina law does not

impose on directors the duties plaintiffs allege were violated, plaintiffs' claims against Johnson

fail.

North Carolina law imposes a duty on directors to make disclosures to the full board of

directors in only two circumstances of which this Court is aware: (1) where there is a transaction

by the corporation in which the director has a direct or indirect interest and (2) where there are

loans from the corporation to a director. *See* N.C. Gen. Stat. §§ 55-8-31, 32. As noted above, it

is undisputed that Johnson did not receive any compensation for any dealings with the Big Sky

defendants and plaintiffs have not identified any conflict of interest involving Johnson.

Instead, plaintiffs rely on the general duties imposed on a director, which include acting in

good faith, with ordinary care, and in a manner reasonably believed to be in the best interest of the

corporation. *See* N.C. Gen. Stat. § 55-8-30(a). North Carolina law further provides that a director

may rely on attorneys, accountants, and other professionals on matters within their competence

when acting for the corporation. N.C. Gen. Stat. § 55-8-30(b). Here, as it relates to whether

Johnson had a duty to disclose to the full board of directors Carpenter and Small's ATF

20

involvement, of which Johnson became aware in approximately 2008, he was first instructed by law enforcement agents *not* to disclose the information to anyone. Second, during negotiations with Carpenter and Small which culminated in the APA, Johnson asked that other members of plaintiffs be involved in a meeting with ATF in order to "have confidential discussions related to various aspects of our current business operations and current acquisition of Big South Wholesale." [DE 849] Dep. Ex. 15. Present at the March 23, 2011, meeting with ATF Agent Whittemore were plaintiffs' treasurer John Taylor, plaintiffs' auditor Clay Worden, U.S. Tobacco Cooperative/U.S. Flue-Cured President Tommy Bunn, and plaintiffs' outside general counsel Marks Arnold.

Following the meeting with Agent Whittemore, the APA closed. Johnson had included in the confidential nature of Carpenter and Small's work plaintiffs' president, treasurer, auditor, and outside counsel – though not the full board of directors, a representative group of plaintiffs' interests. Plaintiffs have not complained that any other person present at the 23 March 2011 meeting failed to make additional disclosures regarding Carpenter and Small's ATF activities, and there is a simple reason these other representatives of plaintiffs did not: they had been strictly instructed by a law enforcement agent not to tell anyone about the meeting. Further, outside counsel Arnold did not advise Johnson after the meeting that, despite law enforcement's warning to keep the meeting confidential, he should disclose Carpenter and Small's ATF involvement to the full board of directors. Johnson was under no duty to disclose to the full board, and it was reasonable for him to follow the directives of law enforcement, especially when he had received no contrary instruction from plaintiffs' counsel.

Johnson has testified that he believed he was acting in the best interests of U.S. Tobacco, and plaintiffs have offered no evidence to contradict Johnson's testimony that he believed that the

21

business involving law enforcement was in the best interests of plaintiffs. *See also* [DE 445] Shear Rep. ¶ VI. Moreover, it is undisputed that Johnson voted in favor of conducting an internal investigation of the Bristol, Virginia operations following the allegations made by Brandon Moore, [DE 848 Ex. 11] Plaintiffs' 30(b)(6) Dep. at 243, and plaintiffs have proffered no evidence that Johnson acted without ordinary care.

Further, the articles of incorporation of U.S. Flue-Cured and Big South Distribution limit the liability of directors and managers to the extent allowed under North Carolina law, that is for all but those acts or omissions that a director knew or believed at the time to be clearly in conflict with the best interests of the corporation and conduct not in good faith. *See* N.C. Gen. Stat. § 55-2-02; 57D-2-30(e); *see also* [DE 444-1; 444-2]. Simply put, where there is no evidence of self-dealing or fraud, "[a]ctions that might have been harmful or decisions that could have been better made do not rise to the level of bad faith in this context." *F.D.I.C. ex rel. Co-op. Bank v. Rippy*, 799 F.3d 301, 313 (4th Cir. 2015).

Johnson also argues that, as to plaintiffs' RICO conspiracy claims against him, there is no evidence of an agreement which would support liability under either 18 U.S.C. § 1962(d) or N.C. Gen. Stat. § 75D-4(a)(3). While an agreement to commit every part of the underlying criminal conduct is not necessary to establish RICO conspiracy liability, the "partners in the criminal plan must agree to pursue the same criminal objective . . . .." *Salinas v. United States*, 522 U.S. 52, 63 (1997). Here, plaintiffs have failed to establish or create a genuine issue of fact as to there having been an agreement between the defendants to commit a crime, and certainly not as to Johnson, who, again, received no benefit from any of the transactions which occurred.

Finally, Johnson is entitled to summary judgment on plaintiffs' unfair and deceptive trade practices claim. "In order to recover under the UDTPA, a party is obliged to show the following:

22

'(1) that the defendant engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or had the capacity or tendency to deceive, and (3) that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" *ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh*, 472 F.3d 99, 122 (4th Cir. 2006) (internal quotation and citation omitted).

Even assuming that Johnson's actions could be found to have the capacity to deceive, his deceptive actions must have been in relation to either interactions between businesses or interactions between businesses and consumers in order to violate North Carolina's UDTPA. *White v. Thompson*, 364 N.C. 47, 52 (2010). While it is true there were interactions between businesses which took place in this case, Johnson's conduct about which plaintiffs' complain is his failure to disclose information about those interactions to his own board of directors. "[D]eceptive conduct contained solely within a single business is not covered by the Act." *Id.*, 364 N.C. at 53. There is no evidence that Johnson engaged in self-dealing, *see Sara Lee Corp. v. Carter*, 351 N.C. 27, 32 (1999), or that he engaged in any commercial conduct at all. Because Johnson was under no duty to disclose to the full board, plaintiffs' claim for fraudulent concealment also fails. *See Pearson v. Gardere Wynne Sewell LLP*, 814 F. Supp. 2d 592, 605 (M.D.N.C. 2011).

Summary judgment in Johnson's favor is therefore appropriate on each of plaintiffs' claims against him.

VI.     Daniel and Johnson's indemnity counterclaims.

Both Daniel and Johnson have filed counterclaims for indemnification based upon U.S. Tobacco's by-laws, which provide for indemnification of each member of the board of directors and each officer and employee of the association for actions or omissions done in good faith. *See*

23

[DE 444-2]. Plaintiffs have offered no argument in opposition to these counterclaims other than to argue that Daniel and Johnson are not entitled to summary judgment on plaintiffs' claims, so they are not entitled summary judgment on their counterclaims. As the Court has determined that summary judgment in favor of defendants Daniel and Johnson is warranted on plaintiffs' claims, the Court further finds that summary judgment in their favor on the counterclaims for indemnification is warranted as well. Daniel and Johnson shall submit affidavits of attorney fees and costs within twenty-one days of the date of entry of this order.

## CONCLUSION

For the foregoing reasons, the United States is DISMISSED as a defendant and the claims against it are dismissed without prejudice; the United States' motion to dismiss or in the alternative for judgment on the pleadings [DE 1122] is DENIED AS MOOT; Johnson's motion for summary judgment [DE 1130] is GRANTED; Daniel's motion for summary judgment [DE 1132] is GRANTED; plaintiffs' motion for partial summary judgment [DE 1134] is GRANTED IN PART and DENIED IN PART; and the Big Sky defendants' motion for summary judgment [DE 1137] is GRANTED. Plaintiffs' motion for leave to file surreply [DE 1139] is GRANTED; the motion for leave to file a consolidated opposition and to exceed page limit [DE 1141] is GRANTED; and the consent motion for leave to file excess pages [DE 1147] is GRANTED.

Counts four, five, six, seven, eight, nine, and seventeen of the second amended complaint against the United States are dismissed without prejudice. Summary judgment on all claims against the Big Sky defendants, Daniel, and Johnson is entered in favor of the moving defendants. Plaintiffs are entitled to summary judgment in their favor on the Big Sky defendants' fourth and sixth counterclaims. Daniel and Johnson are entitled to summary judgment in their favor on their counterclaims for indemnification.

24

As the Big Sky defendants' first, second, third, and fifth counterclaims remain for adjudication, the clerk is DIRECTED to refer this matter to the appropriate United States Magistrate Judge for pretrial conference. Daniel and Johnson shall submit affidavits of attorney fees and costs within twenty-one days of the date of entry of this order.

SO ORDERED, this __19__ day of February, 2019.

Terrence W. Boyle
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE